THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN STEVENSON, Defendant-Appellant.

Fifth District No. 5—88—0343

Opinion filed May 14, 1990.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Ellen Eder Irish, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Stephen Stevenson was charged in the circuit court of St. Clair County with aggravated battery, armed violence, attempt (murder), and home invasion. He was found guilty by a jury on all counts and sentenced to concurrent 25-year terms of imprisonment on the armed violence, attempt (murder), and home invasion charges. No judgment was entered on the aggravated battery verdict.

On June 15, 1987, several phone calls were made to the home of Robert and Jane Winters. During one of the calls, which Jane had answered, Robert took the phone from her and recognized the voice of the defendant. Stevenson told Robert that he would kill him. The record indicates that Stevenson had previously had an affair with Jane Winters.

During the early morning hours of June 16, 1987, Stevenson appeared at the Winters' bedroom window shouting "I'm here and you're dead." After throwing two bricks through the bedroom window, Stevenson kicked in the front door and chased Robert into the kitchen. Robert hit Stevenson with a stick at the same time Stevenson stabbed Robert in the chest with a knife. Robert dropped the stick, got behind Stevenson, and grabbed him by the throat. After a struggle, Stevenson held the knife against Robert's stomach and threatened to stab him again. Robert broke free and went to the home of Katherine Winters, a nearby relative, who called an ambulance.

Jane Winters testified that she and Stevenson had been lovers from October 1986 through June of 1987. Jane Winters' testimony corroborated Robert's, and she further testified that after Robert had fled and as Stevenson was leaving, he put the knife to her throat and said, "You should die, not Bob, next time it will be you." She also testified that Stevenson had threatened Robert before.

Bobby Winters, age 11, testified that on the evening in question, he was awakened by the sound of breaking glass and saw Stevenson

through the window. He further testified that Stevenson kicked in the door and chased Robert into the kitchen. Bobby thereupon ran to Katherine Winters' home. He stated that he did not see a knife in the defendant's hand. Christina Winters, age nine, testified that she had been awakened by a loud noise and, upon coming into the living room, she saw Stevenson holding a knife to Jane Winters' throat. Katherine Winters, Robert's sister-in-law, testified that on the morning of June 16, 1987, Bobby Winters had run into her home and said Stevenson and Robert were fighting. Robert appeared a few moments later and said Stevenson had stabbed him. He was taken to the emergency room at Memorial Hospital in critical condition. The knife had struck an artery and surgery was performed immediately to stop the bleeding. The surgery took several hours and at one point the surgeon advised Robert's family that he was near death. He was hospitalized for approximately two weeks, part of the time on a ventilator. The doctor who performed the surgery testified that Robert could have died from the wound.

Bob Barth, a Fairview Heights police officer, testified that upon being dispatched to the Winters' home to investigate a possible stabbing, he found Stevenson, who said, "Yes, arrest me, I did it." Sometime later, Stevenson said, "The faggot ain't gonna die, is he, I hope—I should have stabbed him a couple more times." Officer Jeffrey Stratman also heard Stevenson make this remark, along with other remarks to the effect that he was glad the incident occurred in St. Clair County because Madison County judges were tougher, and that he wasn't worried about jury trials because the previous year he had beaten three felony charges because of jury trials.

Officer Robert Lewallen testified that he overheard Stevenson tell other jail inmates that he had stabbed Winters, and that he "had been in jail five times and was going again." Officer Philip Wisely testified that after waiving his *Miranda* rights, Stevenson admitted calling the Winters' home, throwing a brick through the window, and stabbing Robert Winters. Stevenson also stated that he entered the Winters' house after Robert did not answer his challenge to come out and fight.

Stevenson testified that he had gotten drunk and called Jane Winters on June 16, 1987. Robert took the phone away, threatened him, and challenged him to come over and fight. Stevenson went, intending to fight Robert with his fists. When Robert wouldn't come outside, Stevenson kicked in the door. Robert was holding a stick, and Stevenson told him to put it down. When he wouldn't, Stevenson drew a knife. Robert backed into the kitchen, and Stevenson followed

him. When Robert struck him with the stick, Stevenson lost his balance and "jabbed" at Robert, striking him in the chest with the knife. Steven further testified that while leaving he told Jane Winters, "I ought to kill you," but denied putting the knife to her throat.

Stevenson's roommate testified that Stevenson told him that he had only wanted to talk to Jane Winters, but things got out of hand, and that he had not meant to stab Winters.

During deliberations, the jury requested a definition of "authority," and asked if it could mean provocation. Over Stevenson's objection, the court returned a supplemental instruction defining "authority" as "permission."

The jury returned verdicts of guilty on all four counts. The trial court entered judgment on all but the aggravated battery charge, finding it to be a lesser-included offense.

Stevenson first argues that the jury was incorrectly instructed on the state of mind necessary for the offense of attempt (murder). In instructing the jury on the definition of attempt (murder), the trial court gave Illinois Pattern Jury Instructions, Criminal, No. 6.05 (2d ed. 1981) (hereinafter IPI Criminal 2d), which provides:

"A person commits the offense of attempt when he, with intent to commit the offense of murder, does any act which constitutes a substantial step toward the commission of the offense of murder.

The offense attempted need not have been committed."

The jury was further instructed pursuant to IPI Criminal 2d No. 6.07 that to sustain the charge of attempt, the State was required to prove:

"*First*: That the defendant performed an act which constituted a substantial step toward the commission of the offense of murder; and

*Second*: That the defendant did so with intent to commit the offense of murder."

The court also gave IPI Criminal 2d No. 7.01, which provides:

"A person commits the offense of murder when he kills an individual if, in performing the acts which cause the death,

[1] he intends to kill or do great bodily harm to that individual or another."

Stevenson maintains that while attempt (murder) requires the specific intent to kill, under the instructions as given, he could have been convicted of attempt (murder) based on either the intent to kill *or* do great bodily harm.

■ Instructions on the offense of attempt (murder) have been a

consistent source of confusion where attempt (murder) is defined as taking a substantial step toward murder and murder is defined as causing death while possessing the intent to kill or do great bodily harm. Clearly, attempt (murder) is a specific intent crime requiring proof of the defendant's specific intent to kill the victim. (*People v. Kraft* (1985), 133 Ill. App. 3d 294, 478 N.E.2d 1154.) Instructions such as those given in the present case, which allow a conviction for attempt (murder) based on the intent to do great bodily harm, have been held to be error. *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28; *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888.

 In the present case, the indictment charging Stevenson with attempt (murder) clearly indicates he could be convicted of attempt (murder) only if the State proved that he possessed the intent to kill Robert Winters. The indictment read as follows:

> "THE SAID DEFENDANT, WITH THE INTENT TO COMMIT THE OFFENSE OF MURDER, IN VIOLATION OF ILLINOIS REVISED STATUTES, CHAPTER 38, SECTION 9—1, PERFORMED A SUBSTANTIAL STEP TOWARD THE COMMISSION OF THAT OFFENSE, IN THAT HE, WITHOUT LEGAL JUSTIFICATION AND WITH THE INTENT TO KILL BOBBY WINTERS, STABBED BOBBY WINTERS WITH A KNIFE."

It is not clear whether the court read the indictment to the jury as the *voir dire* was not transcribed. In the State's opening statement, however, the prosecutor indicated to the jury that to find Stevenson guilty of attempt (murder), they must find he intended to kill Winters. Likewise, during closing argument, defense counsel indicated that the jury must find that Stevenson intended to kill Winters. No mention was made of intending to do great bodily harm. The jury was thus aware from the beginning that the intent to cause great bodily harm to Winters was insufficient to support a verdict of guilty on the attempt (murder) count. We need not determine the effect of this, however, as Stevenson did not object to the instruction as given, nor did he raise the issue in a post-trial motion. Generally, failure to object or raise an issue in a post-trial motion waives that issue on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) This rule is not absolute. Substantial defects in instructions may be reviewed on appeal despite a failure to object or to raise the issue in a post-trial motion if the interests of justice require and this exception will be invoked to correct grave errors or where the evidence is so close that fundamental fairness requires proper jury instructions. (*People v. Thurman* (1984), 104 Ill. 2d 326, 472 N.E.2d 414.) While instructions

informing the jury that a person may be convicted of attempt (murder) based on mental states other than the intent to kill have been held to be error, they do not constitute grave error (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331; *People v. Bridges* (1989), 188 Ill. App. 3d 155, 544 N.E.2d 43), and the evidence in this case can hardly be called close. We therefore conclude that Stevenson has waived any defect in the jury instructions.

Stevenson also argues that under our supreme court's decision in *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141, the trial court incorrectly instructed the jury on murder, and therefore attempt (murder). In *Reddick*, the court held, in a prosecution for murder, a mitigating state of mind such as intense passion or an unreasonable belief that one's actions were justified is an affirmative defense which once raised by the evidence must be disproved by the State. Stevenson maintains that in cases of attempt (murder), the State had a similar duty to disprove the existence of a sudden and intense passion such as that arising from his jealousy of Robert, his paramour's husband. Again, because Stevenson failed to object to the murder instruction or raise this issue in a post-trial motion, it is waived. *Enoch*, 122 Ill. 2d at 185-88, 522 N.E.2d at 1129-31.

■■ Even if not waived, we are not persuaded by Stevenson's argument. Under the old voluntary manslaughter statute, the existence of a mitigating state of mind such as intense passion or an unreasonable belief that the use of force was justified operated to reduce the crime of murder to voluntary manslaughter. (Ill. Rev. Stat. 1985, ch. 38, par. 9—2.) Stevenson maintains that a mitigating state of mind would likewise reduce attempt (murder) to attempt (voluntary manslaughter). Attempt requires an intent to commit a specific offense and an act or acts constituting a substantial step toward the commission of the offense. Attempt (murder) requires the intent to commit murder and attempt (voluntary manslaughter), if such an offense did exist, would require the intent to commit voluntary manslaughter. The offense of voluntary manslaughter requires killing a person without lawful justification while acting out of sudden and intense passion or an unreasonable belief that the killing was justified. Therefore, attempt (voluntary manslaughter) would require the intent to kill without lawful justification coupled with a mitigating state of mind such as intense passion or unreasonable belief that one's action was justified. Logically, one cannot intend to kill without lawful justification and still believe, however unreasonably, that one's actions are justified. Therefore, there can be no attempt (voluntary manslaughter) in cases involving the unreasonable belief that the use of deadly force

was justified. (*People v. Reagan* (1983), 99 Ill. 2d 238, 457 N.E.2d 1260; *People v. Beacham* (1989), 189 Ill. App. 3d 483, 545 N.E.2d 392; *People v. Powell* (1989), 180 Ill. App. 3d 315, 533 N.E.2d 1008.) Likewise, there can be no attempt (voluntary manslaughter) in cases where the alleged mitigating state of mind is a sudden and intense passion. The intent to commit an offense contemplates deliberation. Voluntary manslaughter resulting from a sudden and intense passion, however, precludes any deliberation, but can be found only where the passion engendered is sufficient to deprive a defendant of his self-control. One cannot intend such passion. *People v. Weeks* (1967), 86 Ill. App. 2d 480, 230 N.E.2d 12.

Even if the offense of attempt (voluntary manslaughter) did exist in situations where sudden and intense passion was the alleged mitigating state of mind, the evidence in this case is such that no reasonable jury could find that Stevenson acted out of a *sudden* and intense passion. The record indicates that an hour and a half elapsed between Stevenson's phone call to the Winters' home and his attack on Robert. Any passion engendered by the phone call would have dissipated long before the attack.

■ Stevenson also argues that under the instructions as given, it would be possible for him to receive a greater penalty for attempting to murder Robert than he would receive if Robert had been killed. The existence of a mitigating state of mind will operate to reduce a charge of murder to voluntary manslaughter, a Class 1 felony. Under the instructions as submitted, such a mitigating state of mind would not mitigate the charge of attempt (murder), a Class X felony. As a result, had Stevenson been acting under the influence of sudden and intense passion, he would have received a lesser punishment had Robert died. The penalty for a lesser offense, Stevenson argues, cannot be greater than that for a more serious offense. (*People v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d 512.) Even if not waived by Stevenson's failure to object to the murder instruction, we do not find his argument to be persuasive. Stevenson cites no authority for the proposition that voluntary manslaughter is a more serious offense than attempt (murder), and the legislature, in classifying attempt (murder) as a Class X felony and voluntary manslaughter as a Class 1 felony, clearly considered the former to be a more serious offense. See *Wisslead*, 94 Ill. 2d 190, 446 N.E.2d 512.

■ Stevenson next argues that the jury was prejudiced by the admission of various statements made by him, which were irrelevant and highly prejudicial. Officer Lewallen testified that Stevenson said, "I stuck the m----- f-----. I'm going to jail. I've been there five times

now and I'm going again." Stevenson maintains that in addition to being irrelevant, this statement wrongfully introduced evidence of prior crimes, and such evidence is inadmissible. We disagree. Stevenson specifically admitted stabbing Robert Winters, and as an admission the statement is both relevant and admissible as an exception to the general rule excluding evidence of other crimes. *People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218; *People v. Williams* (1987), 151 Ill. App. 3d 1010, 503 N.E.2d 1090.

■ Officer Jeffrey Stratman testified that Stevenson said he was "glad this was St. Clair County because Madison County judges get up on something like this and I'll probably only get four years and then I could come back and finish the job." Stevenson argues that this statement could only have served to arouse the jury, making it more inclined to find him guilty. Again, we find the statement to have been properly admitted. Stevenson's reference to only getting four years and finishing the job serve as an admission that he in fact had stabbed Winters. *Williams*, 151 Ill. App. 3d at 1013, 503 N.E.2d at 1092-93; *People v. Prante* (1987), 147 Ill. App. 3d 1039, 498 N.E.2d 889.

■ Stratman also testified that Stevenson said he was not worried about jury trials because he had beaten three felony charges in the past year because of jury trials. He maintains that in addition to placing inadmissible evidence of other crimes before the jury, the State impermissibly placed evidence that he had previously availed himself of his constitutional right to a trial by jury. This statement was not emphasized during the State's examination of Stratman, nor was it mentioned during closing argument. In light of the overwhelming weight of the evidence before the jury, we do not find this statement to be prejudicial error. See *People v. Oden* (1960), 20 Ill. 2d 470, 170 N.E.2d 582.

Stevenson further argues that admission of this statement requires a reversal of his conviction because, pursuant to a motion *in limine*, he was to be impeached with only one burglary conviction. The admission of the statements discussed above indicated to the jury that he had a criminal history other than the one burglary conviction, violating the terms of the motion *in limine*. Again, we consider any potential error harmless in light of the evidence against Stevenson.

■ Stevenson also maintains that his statement regarding having beaten three felony charges because of jury trials should not have been admitted into evidence because it was not disclosed pursuant to Supreme Court Rule 412(a)(ii), which requires disclosure of

"any written or recorded statements and the substance of

any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgment of such statements." (107 Ill. 2d R. 412(a)(ii).) Where a defendant is prejudiced by the failure to disclose, the conviction must be reversed. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203; *People v. Eliason* (1983), 117 Ill. App. 3d 683, 453 N.E.2d 908.) The evidence against the defendant in this case is overwhelming. Stevenson came to the Winters' home, shouting "I'm here and you're dead," broke into the house, attacked Robert Winters and stabbed him with a knife. Even if Stevenson's reference to past jury trials had been excluded, the remaining evidence of his guilt is clear and fully supportive of the convictions.

▇▇ We note further that at Stevenson's arraignment, the State's Attorney discussed Stevenson's statement about how he was glad the incident occurred in St. Clair County instead of Madison County. At trial, Officer Stratman testified that Stevenson made the above remark, and further testified that Stevenson went on to state that he wasn't afraid of jury trials and that he had beaten three felony charges because of jury trials. Stevenson moved for a mistrial, arguing that he had not been informed pursuant to discovery that Stratman would testify as to the latter remark and that his ability to effectively cross-examine Stratman was thereby impaired. The trial court denied the motion, but told Stevenson he could recall the officer as an adverse witness. He did not do so, nor did he request a continuance and his failure to do so is fatal to his claim of unfair surprise. (*People v. Smith* (1982), 111 Ill. App. 3d 895, 444 N.E.2d 801.) When faced with a discovery violation, a trial court has numerous options under Supreme Court Rule 415(g)(i), including the granting of a continuance, exclusion of the evidence, or other appropriate relief. (107 Ill. 2d R. 415(g)(i).) An abuse of discretion will be found only where the violation prejudices the defendant and the court did not take steps to eliminate that prejudice. (*People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255.) The court in this case took adequate steps to eliminate any possible prejudice to Stevenson.

Stevenson next contends that he was denied a fair trial by the instruction defining "authority" as "permission." He argues that the term "authority" is a term of general usage needing no definition. Further, if any definition were needed, the one given by the trial court was too limited as it did not include the concepts of right, power, privilege, or justification, as well as permission.

▇▇ The instruction was given in response to a request by the jury. At some point during its deliberations, the jury sent a note to

the court asking if "authority" meant without provocation or authority granted by law. In response, the trial court gave the following instruction: "Black's Law Dictionary defines authority as 'permission.' " Although Black's definition of authority is more extensive than this, "permission" is listed first as the most common definition.

The giving of supplemental instructions to the jury rests with the discretion of the trial court. (*United States v. Keck* (7th Cir. 1985), 773 F.2d 759; *People v. Glass* (1984), 128 Ill. App. 3d 869, 471 N.E.2d 595.) Likewise, granting or denying a jury's request for a dictionary is also a matter of the trial court's discretion. (See *People v. Pelty* (1987), 160 Ill. App. 3d 207, 513 N.E.2d 486; *People v. Zeigler* (1981), 100 Ill. App. 3d 515, 426 N.E.2d 1229.) We believe providing a dictionary definition is similarly a matter for the trial court's discretion absent demonstration of prejudice to the defendant. We do not believe the instruction given in this case prejudiced Stevenson.

■■ ■ Finally, Stevenson argues that his armed violence conviction and either his attempt (murder) or home invasion convictions must be vacated as they are all based upon the same acts. The State concedes that the armed violence conviction must be vacated, but maintains that attempt (murder) and home invasion convictions are proper as they are not based upon the same acts. We agree. The offenses of home invasion and attempt (murder) each require proof of elements not necessary to the other, and neither is a lesser-included offense of the other. We also reject Stevenson's contention that the cause must be remanded for a new sentencing hearing because it is not possible to tell the degree to which the court relied upon the multiple convictions in determining the sentence. Where the record does not demonstrate that the court was influenced in its sentencing on other offenses by a conviction which was subsequently vacated, remand for resentencing is unnecessary. *People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed in part, and vacated in part.

Affirmed in part; vacated in part.

LEWIS, P.J., and CHAPMAN, J., concur.