No. 94,317

STATE OF KANSAS, *Appellee*, v. MARDOQUEO GUTIERREZ, *Appellant*.

(172 P.3d 18)

Opinion filed December 7, 2007.

*Korey A. Kaul*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Nicholas J. Heiman*, assistant county attorney, argued the cause, and *Amy L. Aranda*, assistant county attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Mardoqueo Gutierrez challenges his criminal convictions arising out of a violent encounter with his estranged wife. We granted his petition for review on two issues: the sufficiency of the evidence against him on aggravated burglary and the legal viability of the crime of attempted voluntary manslaughter.

### Factual and Procedural Background

Luz Gutierrez had obtained a protection from abuse order against defendant, her estranged husband, because of a May 23, 2004, incident in which he grabbed her by the neck and choked her until she nearly lost consciousness. Defendant also was arrested and charged with domestic battery in municipal court in Emporia.

On the afternoon of July 20, 2004, defendant appeared in the municipal court and entered into a diversion agreement in the domestic battery case. Although the agreement prohibited him from having contact with Luz, he left the municipal court and drove to her new apartment—the address of which he had obtained from a mutual friend. He parked his truck a block away so that Luz would not see him.

Luz had just arrived home from picking up her daughters when she heard a knock at her door. She was expecting a representative of a shelter to stop by, but when she answered the door, she saw defendant. He told Luz that they had to talk; the testimony is conflicting on whether he then pushed his way into the apartment or was permitted to enter when Luz stepped back from the door.

Luz told defendant she had nothing to say to him and asked him to leave. Defendant demanded that Luz drop all the charges against him. When she responded that she would not, the two argued; Luz called defendant names. In addition, defendant saw marks on Luz that he believed were evidence of her physical re-

lationship with another person. Defendant eventually told Luz that, if she was not going to withdraw the domestic battery charge, he "might as well kill her."

Defendant grabbed Luz by the throat, threw her to the floor, and squeezed hard for 15 to 20 seconds. His testimony indicated he stopped choking Luz either because he saw her eyes flutter or because he looked up and saw their children watching. In any event, Luz lost consciousness. When she awoke, her children were crying and shaking her.

Defendant, who had fled on foot, flagged down a friend a few blocks away, and got into the friend's car. Defendant said he had killed Luz and asked the friend to call 911. The friend drove defendant back to Luz' house, where police and an ambulance had already arrived. Defendant turned himself in to police. Defendant denied any intent to kill Luz. He also eventually testified at trial that he had seen a knife sitting out on a counter in Luz' apartment, but there was no suggestion that Luz threatened him with it or otherwise made a move toward it. Luz ultimately testified that there was no knife and that she did not and could not defend herself. Police found no weapons at the scene other than a butter knife under a pile of dishes in a sink.

Defendant was charged with attempted first-degree murder; aggravated burglary based on the underlying felony of attempted first-degree murder; and violation of a restraining order. Near the close of the State's case at trial, the district judge permitted the State to amend its aggravated burglary charge to rely on an underlying intent to commit first-degree murder rather than attempted first-degree murder. Defense counsel objected but did not articulate any specific prejudice that would result from the amendment.

The defense moved for judgment of acquittal at the close of the State's case, arguing the evidence of premeditation and intent to kill was insufficient. The district judge denied this motion.

The jury was instructed on the elements of attempted first-degree premeditated murder and lesser included offenses, including Instruction No. 6 on attempted voluntary manslaughter in accord

with PIK Crim. 3d 55.01 and PIK Crim. 3d 56.05. The instructions defined heat of passion in accord with PIK Crim. 3d 56.04(e).

The first part of Instruction No. 8 on the crime of aggravated burglary was based on PIK Crim. 3d 59.18 and told the jury the State must prove:

"1. That the defendant knowingly entered or remained in a building, to-wit: [Luz' apartment];

"2. That the defendant did so without authority;

"3. That the defendant did so *with the intent to commit murder in the first degree*, a felony therein;

"4. That there was a human being, to-wit: Luz Gutierrez, at the residence . . . ; and

"5. That this act occurred on or about the 20th day of July, 2004, in Emporia, Lyon County, Kansas." (Emphasis added.)

It then set out the elements of premeditated first-degree murder.

After the members of the jury began deliberations, they submitted several questions to the district judge. The first asked:

"Clarification: If we find the defendant guilty of a charge lesser than attempted murder in the first degree, does that lesser charge replace 'commit murder in the first degree' in claim # 3 of Instr. Number 8."

Over a defense objection, the district court responded: "Yes. See attached sheet." The attached sheet stated that aggravated burglary was defined as "knowingly and without authority entering into any building in which there is a human being to commit a felony therein. Attempted second-degree murder and attempted voluntary manslaughter are classified as felonies."

The jury later asked whether claim 3 on Instruction No. 8 would change if it found defendant guilty of attempted voluntary manslaughter. The district judge heard suggestions from counsel for both sides. Again, over a defense objection, the judge answered in the affirmative, further instructing the jury that intent to commit voluntary manslaughter would replace intent to commit first-degree murder as the underlying crime. The judge then set out the elements of voluntary manslaughter.

Defense counsel argued that this modified instruction undercut his closing argument, which had focused on lack of proof of premeditation and intent. If the jury accepted the defense argument,

it should acquit on the aggravated burglary charge even if it convicted on a lesser included offense of attempted first-degree murder. The district judge granted each side 5 additional minutes of closing argument about the changes to the instructions.

Less than an hour later, the jury returned its guilty verdicts on attempted voluntary manslaughter and aggravated burglary. The district judge later rejected defendant's motions for judgment of acquittal and new trial.

The Court of Appeals affirmed defendant's convictions. On the first issue of sufficiency of the evidence to support aggravated burglary, the panel reasoned that defendant had never had authority to be in Luz' apartment. Thus absence of authority necessarily concurred with his entry into the apartment, and with his time inside it; the evidence was sufficient for a rational factfinder to decide that defendant formed an intent to kill Luz at the relevant time and that his attempt to kill arose out of a sudden quarrel or heat of passion. *State v. Gutierrez*, No. 94,317, unpublished opinion filed August 11, 2006, slip op. at 5-6.

The panel also quickly disposed of defendant's second issue challenging the legal viability of attempted voluntary manslaughter. It distinguished the case relied upon by defendant, *State v. Collins*, 257 Kan. 408, 893 P.2d 217 (1995), which dealt with attempted involuntary manslaughter rather than attempted voluntary manslaughter. *Gutierrez*, slip op. at 6-7.

### Sufficiency of the Evidence on Aggravated Burglary

When the sufficiency of evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Morton*, 283 Kan. 464, 474, 153 P.3d 532 (2007) (quoting *State v. Kesselring*, 279 Kan. 671, 679, 112 P.3d 175 [2005]; *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 [2003]).

Aggravated burglary is defined in K.S.A. 21-3716 as "knowingly and without authority entering into or remaining within any building . . . in which there is a human being, with intent to commit

a felony . . . therein." Defendant insists that any intent to commit the felony of attempted voluntary manslaughter was not concurrent with either unauthorized entry into Luz' apartment or unauthorized refusal to leave it. Rather, the heat of passion or sudden quarrel motivating defendant's throttling of Luz arose later in time.

This argument requires three logical components. Defendant first asserts that the phrases "entering into" and "remaining within" refer to legally distinct factual situations. He is at least partially correct on this specific point. See *State v. Mogenson*, 10 Kan. App. 2d 470, 701 P.2d 1339, *rev. denied* 238 Kan. 878 (1985); *State v. Brown*, 6 Kan. App. 2d 556, Syl. ¶ 4, 630 P.2d 731 (1981). The entering into element of a burglary or aggravated burglary is satisfied when the evidence shows that a defendant crossed the plane of a building's exterior wall. Remaining within refers to a defendant's presence in the building's interior after any entering into, authorized or unauthorized, has been accomplished.

Defendant is incorrect, however, on the two other components of his argument.

First, he also asserts that "entering into" and "remaining within" are inevitably mutually exclusive, *i.e.*, that both cannot be present in a single case, because remaining within requires initial entry to be authorized. This is not so. The paradigmatic example of remaining within may occur when (a) a defendant's initial entry into a building was authorized; (b) authority is later withdrawn; and (c) defendant nevertheless stays inside the building. But such a fact pattern is not essential. A defendant who is unauthorized to enter into a building may continue to be unauthorized while he or she remains within, unless the person or entity empowered to grant permission has decided upon a change in defendant's status. It also is conceivable that a defendant who is unauthorized to enter into a building may be granted permission to remain within and then be subject to later revocation of that permission.

Defendant also is incorrect in insisting that either entering into or remaining within must necessarily be instantaneous. In fact, both entering into and remaining within may take longer than a

mere moment. Certainly, remaining within connotes at least briefly continuous behavior.

The facts of this case are very similar to those that faced the Court of Appeals in *Mogenson,* 10 Kan. App. 2d at 470. Paul Mogenson was charged with, *inter alia,* aggravated burglary based on an aggravated battery of the victim. There was a dispute about whether Mogenson's initial entry was authorized. The victim testified that she did not give him permission to come in. Mogenson and the victim's son said the son had unlocked the door for Mogenson, and then the victim had demanded that Mogenson leave. Instead, an argument and the battery ensued. On appeal, Mogenson challenged the district judge's decision to instruct the jury on both entering into and remaining within.

The Court of Appeals affirmed, stating that an instruction in the alternative was proper on this evidence. 10 Kan. App. 2d at 473. It also discussed the timing of intent formation, approving the district judge's statement to the jury that "intent must exist at the time the defendant entered the house or at the time he remained in the house in the course of the argument." 10 Kan. App. 2d at 475-76.

The panel stated: "[T]he [defendant's] formation of intent to commit aggravated battery [on his wife] must have existed at the time his authority to be in the house was terminated or after he remained in the house without authorization." Because the "evidentiary record conclusively establishe[d] that the argument ensued after defendant was ordered out of the house . . . the requisite intent was present during the course of argument, a time when defendant's authority had terminated." 10 Kan. App. 2d at 476.

We have previously favorably discussed and consistently applied the holding of *Mogenson.* See, *e.g., State v. Bowen,* 262 Kan. 705, 709, 942 P.2d 7 (1997) (analogizing to *Mogenson* to hold intent, absence of authority must be concurrent); *State v. Skelton,* 247 Kan. 34, 49, 795 P.2d 349 (1990) ("[t]he intent to commit a felony therein may be formulated after a defendant is within a structure, but the unlawful act of remaining without authority must concur with the criminal intent to commit a felony or theft to satisfy the statute's elements"). To support a conviction for aggravated bur-

glary, the intent to commit a felony and the unauthorized entering into or remaining within must at some point in time coexist. *Bowen*, 262 Kan. at 709 (citing *Mogenson*, 10 Kan. App. 2d at 472-76). It is not necessary, however, to prove "remaining within" burglary or aggravated burglary to show that the intent to commit a felony was precisely contemporaneous with any withdrawal of a defendant's authority to be inside the building.

Here, viewing all the evidence in the light most favorable to the prosecution, although a rational factfinder may not have been able to conclude defendant was guilty beyond a reasonable doubt of aggravated burglary based on evidence of unauthorized entry contemporaneous with the heat of passion or sudden quarrel necessary for voluntary manslaughter, the evidence was adequate to support defendant's formation of the necessary intent while he remained in Luz' apartment without authority. Once she told him to leave, an expression of sentiment defendant admits occurred, his presence was unauthorized even if previously permitted. Evidence of development of defendant's intent to commit a felony at any point between Luz' expression that he was unwelcome and his departure from the apartment was legally sufficient to support the aggravated burglary conviction.

### Attempted Voluntary Manslaughter

Defendant's second argument is that the crime of attempted voluntary manslaughter based on sudden quarrel or heat of passion is an impermissible legal fiction. In his view, one cannot intend to do an act that is defined by impulse and lack of reflection. This argument raises a question of law subject to unlimited appellate review. See *State v. Sexton*, 232 Kan. 539, 542, 657 P.2d 43 (1983) (function of court to determine whether statute, combination of statutes proscribes certain conduct as criminal).

K.S.A. 21-3403(a) defines voluntary manslaughter as "the intentional killing of a human being committed . . . [u]pon a sudden quarrel or in the heat of passion." K.S.A. 21-3301(a) provides that an attempt is "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in

the perpetration thereof or is prevented or intercepted in executing such crime."

Defendant concedes that many Kansas cases recognize the crime of attempted voluntary manslaughter, but correctly notes that no Kansas court has squarely addressed the issue he raises. See, *e.g.*, *State v. Flores*, 283 Kan. 380, 153 P.3d 506 (2007) (defendant, a minor, pleaded guilty to felony murder, attempted voluntary manslaughter; issue whether case should have remained in adult, juvenile court); *State v. Gayden*, 281 Kan. 290, 130 P.3d 108 (2006) (defendant convicted of six felonies, including attempted voluntary manslaughter; issue whether double jeopardy properly raised through illegal sentence motion); *State v. Dixon*, 252 Kan. 39, 41-49, 843 P.2d 172 (1993) (defendant appealed attempted first-degree murder conviction; issue whether evidence warranted instruction on attempted voluntary manslaughter as lesser included offense). At least one of our sister jurisdictions appears to be in a similar position. See *Stice v. State*, 799 P.2d 1204 (Wy. 1990) (defendant pleaded guilty to attempted voluntary manslaughter; untimely appeal permitted where district court had failed to inform defendant of maximum penalty for that crime; issue whether error harmless).

Here, defendant relies on an Illinois Court of Appeals case, *People v. Stevenson*, 198 Ill. App. 3d 376, 555 N.E.2d 1074 (1990). In that case, defendant Stephen Stevenson had telephoned the home of his ex-paramour and her husband and had threatened to kill the husband. In the early hours of the next day, Stevenson came to the house, ready to fight. When the husband refused to come outside, Stevenson threw a brick through a window, kicked in a door, and stabbed the husband in the chest. Although seriously injured, the husband recovered; Stevenson was convicted of, *inter alia*, attempted murder.

On appeal Stevenson noted that, in a prosecution for murder, a mitigating state of mind such as intense passion or an unreasonable belief that one's actions were justified is an affirmative defense that, once raised by the evidence, must be disproved by the State. See 198 Ill. App. 3d at 383 (citing *People v. Reddick*, 123 Ill. 2d 184, 526 N.E.2d 141 [1988]). Therefore, he asserted, in cases of at-

tempted murder, the State should have a similar duty to disprove the existence of a sudden and intense passion such as that arising from his jealousy of his ex-paramour's husband; and a mitigating state of mind that would reduce murder to voluntary manslaughter should reduce attempted murder to attempted voluntary manslaughter.

The Illinois court ultimately determined Stevenson's failure to raise the issue at trial resulted in waiver. 198 Ill. App. 3d at 383. Nevertheless, it added that Stevenson's argument was unpersuasive because, under Illinois' statutory definitions, no such thing as attempted voluntary manslaughter could exist:

"[T]here can be no [attempted voluntary manslaughter] in cases where the alleged mitigating state of mind is a sudden and intense passion. The intent to commit an offense contemplates deliberation. Voluntary manslaughter resulting from a sudden and intense passion, however, precludes any deliberation, but can be found only where the passion engendered is sufficient to deprive a defendant of his self-control. One cannot intend such passion." *Stevenson*, 198 Ill. App. 3d at 384 (citing *People v. Weeks*, 86 Ill. App. 2d 480, 230 N.E.2d 12 [1967]).

We note that New York has reached the same conclusion under its statutes. See *People v. Brown*, 21 A.D.2d 738, 249 N.Y.S.2d 922 (1964), *overruled on other grounds People v. Jackson*, 49 A.D.2d 680, 370 N.Y.S.2d 739 (1975); see also *People v. Martinez*, 81 N.Y.2d 810, 811-12, 595 N.Y.S.2d 376, 611 N.E.2d 277 (1993) (settled law that attempted manslaughter in the first degree is nonexistent crime); but see *People v. Foster*, 19 N.Y.2d 150, 278 N.Y.S.2d 603, 225 N.E.2d 200 (1967) (no reversal required where defendant pleaded guilty to attempted manslaughter in compromise with prosecution). Alabama, Massachusetts, Maine, Nevada, and Wisconsin have done likewise. See *Westbrook v. State*, 722 So. 2d 788, 792 (Ala. Crim. App. 1998) (person cannot attempt to kill as result of heat of passion; "If he attempts to kill that person, then he intends to cause that person's death. If he intends to cause that person's death, then he is guilty of attempted murder, not attempted manslaughter"; specific intent to take life not essential element of manslaughter); *Commonwealth v. Hebert*, 373 Mass. 535, 537-38, 368 N.E.2d 1204 (1977) (attempted voluntary manslaughter logically impossible, factually indistinguishable from as-

sault with intent to kill); *State v. Howard*, 405 A.2d 206, 212 (Me. 1979) ("Because of the discrepancy in culpable mental states between criminal attempt on the one hand and manslaughter on the other, the proffered crime of 'attempted manslaughter' is a logical impossibility"; voluntary manslaughter defined as "recklessly" or with "criminal negligence" causing death of another.); *Curry v. State*, 106 Nev. 317, 319-20, 792 P.2d 396 (1990) ("One cannot logically specifically intend to act pursuant to a spontaneous, unanticipated, and therefore, truly irresistible passion"; voluntary manslaughter general intent crime; thus attempted voluntary manslaughter cannot exist.); *State v. Carter*, 44 Wis. 2d 151, 155-56, 170 N.W.2d 681 (1969) (because intent not an element of manslaughter, attempted manslaughter does not exist).

However, a majority of the jurisdictions weighing in on this question have specifically rejected the argument defendant makes. See *State v. Barnes*, 162 Ariz. 92, 93, 781 P.2d 69 (Ct. App. 1989) (conviction for attempted heat-of-passion or sudden quarrel manslaughter based on intentional, knowing action to cause death not prohibited); *People v. Van Ronk*, 171 Cal. App. 3d 818, 824-25, 217 Cal. Rptr. 581 (1985) ("There is nothing illogical or absurd in a finding that a person who unsuccessfully attempted to kill another did so with the intent to kill which was formed in the heat of passion or which arose out of an honest but unreasonable belief in the necessity of self-defense."); *Taylor v. State*, 444 So. 2d 931, 934 (Fla. 1983) ("it is not a logical impossibility for the crime of attempted manslaughter to exist in situations where, if death had resulted, the defendant could have been found guilty of voluntary manslaughter," *i.e.*, where sufficient evidence present of intent to kill); *Anthony v. State*, 274 Ind. 206, 212, 409 N.E.2d 632 (1980) (while there can be no crime of attempted reckless homicide, "since both murder and manslaughter can be proved by evidence of the knowing or intentional killing of another human being, . . . the crime of attempted manslaughter does exist under our present statutes"; culpability requirement satisfied); *State v. Harper*, 205 La. 228, 229-31, 17 So. 2d 260 (1944) (attempted voluntary manslaughter recognized as offense, given specific intent requirement); *Cox v. State*, 311 Md. 326, 331-34, 534 A.2d 1333

(1988) (specific intent required for both attempt, voluntary manslaughter); *People v. Genes*, 58 Mich. App. 108, 110, 227 N.W.2d 241 (1975) (because offense of voluntary manslaughter requires proof of intent to take life, voluntary manslaughter can be attempted); *State v. Jernigan*, 139 N.M. 1, 7-8, 127 P.3d 537 (2005) (by statute, voluntary manslaughter requires proof of general intent; however, if conduct qualifies as second-degree murder committed with sufficient provocation, specific intent crime defined; under limited circumstances, involving provocation, voluntary manslaughter also may be specific intent crime); *State v. Rainey*, 154 N.C. App. 282, 286-88, 574 S.E.2d 25, *rev. denied* 356 N.C. 621, 575 S.E.2d 520, 521 (2002) (because essential element of voluntary manslaughter intent to kill, attempted voluntary manslaughter cognizable offense); *Com. v. Garner*, 314 Pa. Super. 566, 569, 461 A.2d 302 (1983) (attempted voluntary manslaughter exists under Pennsylvania law); *State v. Ruane*, 912 S.W.2d 766, 783 (Tenn. Crim. App. 1995), *disapproved on other grounds State v. Williams*, 977 S.W.2d 101 (Tenn. 1998) (recognizing attempted voluntary manslaughter as lesser included offense of attempted murder; offense requires intent to kill); *Ex parte Buggs*, 644 S.W.2d 748, 750 (Tex. Crim. App. 1983) (element of intent essential to prove voluntary manslaughter; attempted voluntary manslaughter classified as lesser include offense of attempted murder); *State v. Norman*, 580 P.2d 237, 239-40 (Utah 1978), *overruled on other grounds State v. Standiford*, 769 P.2d 254 (Utah 1988) (no offense of attempted "reckless" manslaughter exists; however attempted manslaughter under "extreme mental or emotional disturbance" recognized as specific intent crime); see also *State v. Holbron*, 80 Hawaii 27, 45, 904 P.2d 912 (1995) (attempted manslaughter recognized by statute; see Hawaii Rev. Stat. § 707-702[2] [1993 & 2006 Supp.]).

In Kansas, as in Illinois and New York, an attempt requires specific intent. Kansas does not recognize attempted felony murder, *State v. Robinson*, 256 Kan. 133, Syl. ¶ 1, 883 P.2d 764 (1994); attempted involuntary manslaughter, *State v. Gayden*, 259 Kan. 69, Syl. ¶ 2, 910 P.2d 826 (1996); *State v. Shannon*, 258 Kan. 425, Syl. ¶ 3, 905 P.2d 649 (1995); *State v. Collins*, 257 Kan. 408, Syl.

¶ 4, 893 P.2d 217 (1995); or unintentional but reckless second-degree murder under K.S.A. 21-3402(b); *State v. Clark*, 261 Kan. 460, 466-67, 931 P.2d 664 (1997); *Shannon*, 258 Kan. at 429. In other words, we have recognized in other circumstances that it is logically impossible to attempt to commit an unintentional act.

Yet, in Kansas, unlike in Illinois and New York, voluntary manslaughter is a specific intent offense. See K.S.A. 21-3403(a) (defining voluntary manslaughter); *State v. Burrow*, 221 Kan. 745, 749, 561 P.2d 864 (1977) (involuntary manslaughter distinguished from voluntary manslaughter by the lack of intent to kill); *State v. Conley*, 6 Kan. App. 2d 280, 286, 627 P.2d 1174, *rev. denied* 229 Kan. 671 (1981) (voluntary manslaughter is specific intent crime; requires intent to kill); compare *Stevenson*, 198 Ill. App. 3d at 383 (citing 38 Ill. Rev. Stat. § 9-2[a] [1985] [defining voluntary manslaughter as: "A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation"]); N.Y. Penal Law §§ 125.115, 125.20 (McKinney 2004) (neither first- nor second-degree manslaughter require an intent to kill).

A defendant can form an intent to kill without premeditation, without reflection, on impulse, while enraged or provoked, but, in order to support a conviction of voluntary manslaughter, that essential element of intent must be present. Moreover, if a defendant has formed the necessary intent, it is not logically impossible for him or her to attempt and fail to carry it out, that is, to engage in an overt act toward the accomplishment of an intentional crime. See *State v. Graham*, 275 Kan. 831, 836-40, 69 P.3d 563 (2003); *State v. Hedges*, 269 Kan. 895, 905-06, 8 P.3d 1259 (2000). For these reasons, we reject defendant's argument on this issue. Attempted voluntary manslaughter is a valid crime in Kansas.

We make one additional parting observation. The *Stevenson* decision from Illinois also is less than persuasive because it focuses on the inability of a defendant to intend the passion inherent in voluntary manslaughter. The appropriate inquiry is not whether a defendant intends passion, but whether he or she intends to kill. In both Kansas and Illinois, the conduct proscribed by the volun-

tary manslaughter statute, as a homicide, is not the passion. It is the killing. The existence of heat of passion or sudden quarrel, arising from severe provocation, reduces what would otherwise be murder to voluntary manslaughter. See *State v. Guebara*, 236 Kan. 791, 796, 696 P.2d 381 (1985).

Affirmed.

DAVIS and JOHNSON, JJ., not participating.

McANANY, J., and LARSON, S.J., assigned.