NOT DESIGNATED FOR PUBLICATION

No. 123,152

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HUGO RODRIGUEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Seward District Court; LINDA P. GILMORE, judge. Opinion filed December 30, 2022. Affirmed in part, reversed in part, sentence vacated, and remanded with directions.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Russell Hasenbank*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before CLINE, P.J., ATCHESON and COBLE, JJ.

PER CURIAM: In the midst of a routine traffic stop, Defendant Hugo Rodriguez took off running. With two police officers in pursuit, Rodriguez drew a handgun, fired several shots, and then surrendered as they closed in. A jury sitting in Seward County District Court convicted Rodriguez of attempted heat-of-passion voluntary manslaughter and two counts of aggravated assault of a law enforcement officer, among other felony charges. Rodriguez disputes the sufficiency of the trial evidence to support those three convictions. We agree as to the attempted voluntary manslaughter and disagree on the aggravated assaults. We, therefore, affirm the aggravated assault convictions, reverse the

1

conviction for attempted voluntary manslaughter, vacate that sentence, and remand to the district court with directions to resentence Rodriguez.

FACTUAL AND PROCEDURAL HISTORY

The basic facts of the criminal episode are straightforward. About 7:30 p.m. on July 2, 2015, Liberal Police Officer Russell Almes made a traffic stop of a sedan in which Rodriguez was a passenger. The stated reason for the stop was the failure of the driver to wear a seatbelt. See K.S.A. 2021 Supp. 8-2503 (law enforcement officer may stop motor vehicle if occupants of front seats are not wearing seatbelts). Because the driver and Rodriguez seemed unusually nervous, Almes concluded he should search the car and called for another officer to assist him. Liberal Police Sergeant Mark West responded. Almes was getting ready to do a pat-down search of Rodriguez for officer safety when Rodriguez bolted and began to run away. Almes gave chase on foot, yelling at Rodriguez to stop and suggesting he would face charges for obstruction. West got in Almes' marked police SUV and drove along a route to get ahead of Rodriguez and intercept him in flight.

Rodriguez stopped in a vacant lot, drew a handgun from his belt area, and fired several shots at West as he sat in the driver's seat of the SUV. West reported to the dispatcher that shots had been fired and sought to take cover. During the trial, West testified that although he did not see Rodriguez point or discharge a firearm, he heard the shots. Almes trailed Rodriguez by about 25 yards and saw what was unfolding. He drew his handgun and called the dispatcher for additional officers. At trial, Almes testified he was immediately fearful that Rodriguez might next shoot at him. Apparently seeing Almes with his handgun drawn, Rodriguez dropped his handgun and laid down on the ground. After the officers handcuffed Rodriguez, West found two bullet holes in the police SUV.

2

The State charged Rodriguez with five felonies: The attempted first-degree murder of West; two counts of aggravated assault, one for each officer; discharge of a weapon into an occupied motor vehicle; and criminal possession of a firearm by a convicted felon. The jury heard evidence in the case in May 2016 and convicted Rodriguez of attempted heat-of-passion voluntary manslaughter, as a lesser included offense of the attempted murder charge, and of each of the other charges. The district court later sentenced Rodriguez to a controlling prison term of 130 months and postrelease supervision for 24 months, reflecting the standard guidelines punishment for the attempted voluntary manslaughter conviction based on Rodriguez' criminal history. The district court imposed lesser concurrent sentences on the other felony convictions.

This court granted Rodriguez' motion to pursue a late appeal.

LEGAL ANALYSIS

On appeal, Rodriguez contends the State produced insufficient evidence at trial to support the guilty verdicts on the attempted heat-of-passion voluntary manslaughter of West and the aggravated assaults of both West and Almes. He has not challenged the other convictions, and we do not consider them further.

In reviewing a sufficiency challenge, we construe the trial evidence in a light most favorable to the party prevailing in the district court, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

3

As criminalized in K.S.A. 2021 Supp. 21-5404(a)(1), voluntary manslaughter is the knowing killing of a person done "[u]pon a sudden quarrel or in the heat of passion." An attempt, of course, entails a failed effort to commit a crime. K.S.A. 2021 Supp. 21-5301(a). The Kansas Supreme Court has recognized attempted heat-of-passion voluntary manslaughter to be a valid crime. *State v. Gutierrez*, 285 Kan. 332, 344, 172 P.3d 18 (2007). So attempted voluntary manslaughter is a legally proper lesser included offense of attempted intentional first-degree murder, and a jury should be instructed on it if the trial evidence, viewed favorably to the defendant, could support a guilty verdict. See *State v. Berkstresser*, 316 Kan. ___, Syl. ¶ 2, 2022 WL 17408873 (No. 122,557, filed December 2, 2002). But a defendant is not precluded from challenging the sufficiency of the evidence to support a guilty verdict on a lesser included offense merely because a district court has given the jury an instruction on that offense.

Here, the relevant jury instruction identified heat of passion rather than a sudden quarrel as the factual element the jury should consider on the attempted voluntary manslaughter charge. And Rodriguez focuses his attention on the evidence pertaining to that element. This court has discussed what constitutes sufficient "heat of passion" to mitigate an intentional murder to voluntary manslaughter:

> "Heat of passion requires an emotional stimulus of such magnitude to prompt an ordinary person to kill spontaneously and, thus, without premeditation or specific intent. *State v. Bailey*, 256 Kan. 872, 886, 889 P.2d 738 (1995) (The stimulus must cause '"an ordinary man to lose control of his actions and his reason."'); *State v. McClanahan*, 254 Kan. 104, 114, 865 P.2d 1021 (1993) (heat of passion entails '"any intense or vehement emotional excitement of the kind prompting violent and aggressive action"'). The furor effectively mitigates the calculation and evil-mindedness required for murder with a hot-blooded loss of reason and control—a mental state the law finds less blameworthy. But the requisite stimulus must be sudden and extreme. Tribulations, annoyances, and vexations don't clear that formidable barrier. The mental disintegration required for heat of passion goes beyond mere upset or anger. The measure is an objective one, considering what would unhinge 'an ordinary person.' *State v. Follin*, 263 Kan. 28, Syl. ¶ 2, 947 P.2d 8

4

(1997). So a defendant's particular susceptibility to even extreme emotional distress in some circumstances would not be a consideration in gauging the appropriateness of an instruction on voluntary manslaughter. 263 Kan. at 33-34." *State v. Paulson*, No. 108,795, 2015 WL 6444314, at *4 (Kan. App. 2015) (unpublished opinion).

Although *Paulson* and the authority it cites looked at the predecessor statute to K.S.A. 2021 Supp. 21-5404, "heat of passion" has long been an element of voluntary manslaughter, so the discussion remains relevant. In considering "heat of passion" under the current statute, the Kansas Supreme Court has reiterated the extreme nature of the required upheaval "'as "any intense or vehement emotional excitement of the kind prompting violent and aggressive action, such as rage, anger, hatred, furious resentment, fright, or terror," based "on impulse without reflection."'" *State v. Campbell*, 308 Kan. 763, 775, 423 P.3d 539 (2018) (quoting *State v. Hayes*, 299 Kan. 861, 864, 327 P.3d 414 [2014]).

In short, heat-of-passion voluntary manslaughter is a form of homicide in which some extraordinary provocation that would cause a reasonable person to lose control and all sense of reason immediately prompts the perpetrator to kill spontaneously and without reflection. The provocation and the response effectively mitigate premeditation and an intent to kill, replacing that cold-bloodedness with a hot-blooded passion. The same holds true for an attempt. There must be both an adequate provocation and a near instant violent outburst in response to it.

Given those principles, Rodriguez' insufficiency argument has merit. Even examining the evidence in the best light for the State, there was neither a legally adequate provocation nor an immediate uncontrolled reaction. Almes initiated and was carrying out what, to all accounts, amounted to a routine traffic stop and incipient pat-down search of an occupant of the car. Although some people might consider the seat-belt violation to be a picayune reason for a traffic stop, it was lawful. And while a traffic stop may be annoying and possibly nerve wracking, it would not induce in a reasonable person the

5

sort of spontaneous homicidal frenzy marking heat-of-passion voluntary manslaughter. The same holds for a pat-down search. Those searches are necessarily intrusive by design and may seem obtrusive or embarrassing. But they are not the stuff spurring voluntary manslaughters. Even a legally questionable traffic stop or pat-down carried out in an otherwise reasonable manner would not be the sort of conduct amounting to sufficient provocation.

A contrary rule would be extraordinary: A person charged with killing a law enforcement officer during a routine traffic stop would be entitled to a jury instruction on heat-of-passion voluntary manslaughter virtually automatically. We are confident that is not the law. For that reason alone, Rodriguez' conviction for attempted voluntary manslaughter fails.

If that were not enough, Rodriguez did not evince the sort of unhinged loss of control and reason required to support either a heat-of-passion voluntary manslaughter or an attempt. To the contrary, his actions were reasoned and deliberate however unwise and unwarranted they may have been. As the officers prepared to search Rodriguez, he ran, presumably expecting they would find his handgun and suspecting, if not knowing, he would be in trouble when they did. Only when the officers pursued him—and seemed to be closing in—did he draw the weapon and fire. And when Almes responded by unholstering his handgun, Rodriguez quickly and demonstrably surrendered. Nothing in that course of conduct displayed or even hinted at an emotional meltdown, let alone one that immediately devolved into homicidal violence. That is another basis on which the State's evidence fails.

When a conviction lacks the necessary evidentiary support in the trial record, we reverse the conviction, vacate the sentence, and enter a judgment of acquittal. See *State v. Baumgarner*, 59 Kan. App. 2d 330, 331, 481 P.3d 170 (2021). We do so here. Because

6

this is a case with multiple convictions, we must remand to the district court for resentencing consistent with K.S.A. 2021 Supp. 21-6819(b)(5).

We now turn to Rodriguez' challenge to the aggravated assault of a law enforcement officer convictions under K.S.A. 2021 Supp. 21-5412(d)(1). As we have indicated, Rodriguez does not fare as well with this part of his appeal. To convict, the State had to prove Rodriguez knowingly put Almes and West "in reasonable apprehension of immediate bodily harm" with a deadly weapon while they were performing their regular duties and were in uniform or otherwise identified as law enforcement officers. K.S.A. 2021 Supp. 21-5412. Rodriguez focuses this argument on whether the evidence established the officers were in reasonable apprehension of the requisite harm. In doing so, he wisely, if tacitly, acknowledges he used a deadly weapon and Almes and West were in uniform performing police duties.

Rodriguez submits Almes could not have been in reasonable apprehension because he saw that the only shots were directed toward West. But Almes testified that he believed he could be Rodriguez' next target—a fair conclusion prompting a reasonable apprehension of bodily harm given his proximity to Rodriguez and the effective range of a handgun. See *Estate of Randolph v. City of Wichita*, 57 Kan. App. 2d 686, 717-18, 459 P.3d 802 (2020) (in discussing civil assault, court recognizes brandishing of handgun creates "a zone of threat or danger," given weapon's range, and persons within zone may experience reasonable apprehension of bodily harm). Rodriguez secondarily suggests he could not have knowingly placed Almes in apprehension because he didn't appreciate where the officer was. But the evidence shows Almes trailed fairly closely behind Rodriguez and was yelling commands at him. A jury properly could find Rodriguez knew Almes was in the immediate vicinity when he drew his handgun and began shooting.

As to West, Rodriguez submits the officer could not have been in reasonable apprehension because he did not see Rodriguez point the handgun at the police SUV and

7

then fire in that direction. But West heard the shots and could reasonably conclude Rodriguez had a firearm and was using it to effect his escape, so he and Almes were likely targets. Indeed, West wasted no time in reporting shots had been fired and seeking protective cover—actions fully consistent with an apprehension of immediate harm.

Without belaboring this point, the trial evidence sufficiently supported the jury's guilty verdicts for aggravated assault of a law enforcement officer as to both Almes and West. We affirm those convictions.

In summary, then, we set aside Rodriguez' conviction for attempted voluntary manslaughter, vacate the sentence, and enter a judgment of acquittal on that charge. Vacating the sentence on the primary crime of conviction will have some effect on the other sentences. We affirm each of the other convictions and remand to the district court with directions to resentence Rodriguez on them.

Affirmed in part, reversed in part, sentence vacated, and remanded for resentencing.