NOT DESIGNATED FOR PUBLICATION

No. 125,821

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM WESLEY FLESHER JR.,
*Appellant.*

MEMORANDUM OPINION

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Oral argument held November 12, 2024. Opinion filed December 6, 2024. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE and BRUNS, JJ.

PER CURIAM: A jury convicted William Wesley Flesher Jr. of aggravated battery, aggravated burglary, and theft. Flesher timely appeals his convictions, arguing the district court erred in failing to give instructions he did not request and by providing a legally incorrect answer to a jury question. Flesher also claims the prosecutor committed prosecutorial error in closing argument and the cumulative effect of all these errors denied him a fair trial. Following a careful review, we find the district court erred in failing to provide the unrequested instructions, but Flesher failed to show clear error, and there was no error in the answer provided to the jury or the statements by the prosecutor.

1

Because the claimed errors are instructional errors, and Flesher did not show clear error, there is no cumulative error analysis for us to consider. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On July 20, 2021, Flesher texted Vera Birdwell seeking clarification on the status of their relationship. Birdwell blocked Flesher's phone number. Around midnight, Flesher showed up at Birdwell's residence unannounced. Birdwell continually asked Flesher to leave, hit him in the head with a handgun, and threw shoes at him to get him out of her residence. When Birdwell hit Flesher with the gun, it discharged. Birdwell put the gun down, called her neighbor for help, and turned her back to Flesher while she was on the phone. Flesher began mouthing off to Birdwell and attacked her from behind, striking her multiple times and causing a piece of her ear to be torn by the set of keys in his hand. After a short struggle, Flesher then grabbed Birdwell's gun and fled.

The State charged Flesher with aggravated battery, aggravated burglary, and theft. Flesher proceeded to a jury trial in September 2022.

The facts need not be set out in detail to address the issues raised on appeal as Flesher admits he entered Birdwell's residence and remained in her home even though she repeatedly told him to leave before he struck her on her head and face. The issues on appeal address his claims of instructional error to the jury, prosecutorial error, and cumulative error. Additional facts will be set out as needed.

ANALYSIS

I. THE DISTRICT COURT DID NOT COMMIT CLEAR ERROR WHEN IT FAILED TO INSTRUCT THE JURY THE STATE MUST DISPROVE SELF-DEFENSE BEYOND A REASONABLE DOUBT

Flesher admits the district court provided a self-defense instruction and a general burden of proof instruction but now claims the district court erred by failing to instruct the jury the State also had the burden to disprove his self-defense claim beyond a reasonable doubt and the burden does not shift to him as the defendant. Flesher argues this instructional error demands reversal of his aggravated battery and aggravated burglary convictions as it denied him a fair trial. In response, the State claims Flesher's argument fails as the jury instructions read in their entirety were sufficient. Flesher replies that the State's argument makes K.S.A. 21-5108(c) redundant and unnecessary.

When considering instructional issues, we first consider the reviewability of the issue from both jurisdiction and preservation viewpoints. We then consider whether the instruction was legally and factually appropriate. Finally, if the district court erred, we must determine whether the error was harmless. *State v. McLinn*, 307 Kan. 307, 317-18, 409 P.3d 1 (2018).

Our reversibility inquiry depends on whether a party properly preserved the jury instruction issue below. 307 Kan. at 317. Unpreserved instructional errors are reviewed for clear error. K.S.A. 22-3414(3). Jury instructions are clearly erroneous if an error occurred and we, as the reviewing court, are "'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.'" *McLinn*, 307 Kan. at 318. The party claiming clear error carries the burden to establish prejudice. 307 Kan. at 318.

The parties agree that "[w]hen a defendant articulates a defense of self-defense, it is error not to instruct the jury that the State's burden of proof does not shift to the defendant." *State v. Staten*, 304 Kan. 957, Syl. ¶ 4, 377 P.3d 427 (2016). Flesher admits he failed to ask the district court for a burden of proof instruction related to his self-defense claim. Flesher, therefore, must establish an instructional error occurred and firmly convince us the jury would have reached a different verdict had such error not occurred. See *McLinn*, 307 Kan. at 318.

K.S.A. 21-5108(c) explains:

> "A defendant is entitled to an instruction on every affirmative defense that is supported by competent evidence. Competent evidence is that which could allow a rational fact finder to reasonably conclude that the defense applies. Once the defendant satisfies the burden of producing such evidence, the state has the burden of disproving the defense beyond a reasonable doubt."

Flesher claims the district court erred in failing to explicitly tell the jury the State had the burden to disprove a self-defense theory beyond a reasonable doubt. Flesher suggests the district court should have provided the burden of proof instruction recommended by PIK Crim. 4th 51.050 (2021 Supp.):

> "The defendant raises [self-defense] as a defense. Evidence in support of this defense should be considered by you in determining whether the State has met its burden of proving that the defendant is guilty. The State has the burden to disprove this defense beyond a reasonable doubt. The State's burden of proof does not shift to the defendant."

Again, Flesher did not propose this instruction to the court and did not object to its omission.

Instruction No. 4 informed the jury of what the State was required to prove:

"The defendant is charged in Count One with aggravated battery (disfigurement). The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1.     The defendant knowingly caused disfigurement of Vera Birdwell.

"2.     This act occurred on or about the 21st day of July, 2021, in Riley County, Kansas.

"The State must prove that the defendant committed the crime knowingly. A defendant acts knowingly when the defendant is aware that his conduct was reasonably certain to cause the result complained about by the State."

The district court provided two additional jury instructions for the alternative charges of aggravated battery in which great bodily harm, disfigurement, or death was inflicted and for simple battery.

Instruction No. 8 related to Flesher's self-defense claim and stated:

"Defendant claims his use of force was permitted as self-defense of the two aggravated battery charges or battery charge.

"Defendant is permitted to use physical force against another person when and to the extent that it appears to him and he reasonably believes such physical force is necessary to defend himself against the other person's imminent use of unlawful force. Reasonable belief requires both a belief by the defendant and the existence of facts that would persuade a reasonable person to that belief.

"When use of force is permitted as self-defense, there is no requirement to retreat.

"This presumption may be overcome if you are persuaded beyond a reasonable doubt that the person did not reasonably believe that use of force likely to cause death or great bodily harm was necessary to prevent imminent death or great bodily harm to himself."

5

Instruction No. 9 also related to Flesher's self-defense claim and stated:

"A person who initially provokes the use of force against himself is not permitted to use force to defend himself unless the person reasonably believes he is in present danger of death or great bodily harm, and he has used every reasonable means to escape such danger other than the use of physical force which is likely to cause death or great bodily harm to the other person."

Instruction No. 12 explained the State's burden of proof:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt about the truth of any of the claims that the State must prove, you must find the defendant not guilty. If you have no reasonable doubt about the truth of each of the claims that the State must prove, you should find the defendant guilty."

Flesher relies on *Staten*, in which the district court gave a general burden of proof jury instruction but did not specifically instruct the jury how the reasonable doubt standard should apply to the self-defense instruction. Our Supreme Court ultimately determined failing to give the PIK instruction was error but not clear error. The court explained: "In light of the generally correct nature of the instructions as a whole as well as the nature of the evidence supporting Staten's claim of self-defense, we find no basis in the instructions to reverse Staten's conviction." 304 Kan. at 967.

Flesher now claims he never argued he was entitled to a presumption, the jury never received additional instruction about any presumption applying to a self-defense claim, and the presumption instruction provided more explanation than those provided in *Staten*, which confused the jury.

6

Here, the district court instructed:

> "When use of force is permitted as self-defense, there is no requirement to retreat.
>
> "This presumption may be overcome if you are persuaded beyond a reasonable doubt that the person did not reasonably believe that use of force likely to cause death or great bodily harm was necessary to prevent imminent death or great bodily harm to himself."

Like *Staten*, the district court here gave a general burden of proof instruction but did not specifically instruct the jury how the reasonable doubt standard should apply to the self-defense instruction. See 304 Kan. at 962. While Flesher may not have argued he was entitled to a presumption, Instruction No. 8 explained the presumption of self-defense "may be overcome *if you are persuaded beyond a reasonable doubt* that the person did not reasonably believe that use of force likely to cause death or great bodily harm was necessary to prevent imminent death or great bodily harm to himself." (Emphasis added.) That is, the self-defense claim may be overcome if the State proves beyond a reasonable doubt such use of force was unnecessary. We find the district court erred by not specifically instructing the jury how the reasonable doubt standard should apply to the self-defense instruction, but the error does not rise to the level of clear error. The nature of the instructions, overall, was correct and, given the nature of the evidence supporting Flesher's self-defense claim, provides no basis to reverse Flesher's aggravated battery conviction based on instructional error.

Flesher also tries to distinguish his case from that of *State v. Buck-Shrag*, 312 Kan. 540, 477 P.3d 1013 (2020), in which the district court provided a generally accurate burden of proof instruction for self-defense that omitted language explicitly stating the State had the burden of disproving self-defense beyond a reasonable doubt. There, our Supreme Court noted the jury instructions could have been clearer "by explicitly informing the jury that the State had to disprove the self-defense theory beyond a

reasonable doubt," but "[t]he instructions, as a whole, fairly and accurately stated the law" and were not erroneous. 312 Kan. at 553-54.

Here, while the jury instructions could have been clearer "by explicitly informing the jury that the State had to disprove the self-defense theory beyond a reasonable doubt," the instructions "fairly and accurately stated the law." 312 Kan. at 553-54. Flesher has failed to convince us the jury would have reached a different verdict.

K.S.A. 21-5108(c) is also not rendered redundant and unnecessary under this analysis. Flesher received a self-defense instruction. But his defense was not supported by competent evidence that would allow a rational fact-finder to reasonably conclude the defense applied. Flesher's self-defense argument was weak as the evidence suggested Birdwell set the gun down after it discharged and turned her back to Flesher to use her phone. Flesher had an opportunity to leave the premises, which is what Birdwell had repeatedly requested. Instead, Flesher escalated the situation by hitting Birdwell in the head and face from behind while she was defenseless. Flesher suggested he was scared Birdwell would take the gun and shoot at him as he left, but, again, Birdwell had set the gun down and walked away from the gun and Flesher. In fact, if Flesher was afraid Birdwell would shoot at him on his way out, he could have grabbed the gun and left without attacking her before he left the residence.

Flesher could not have reasonably believed such physical force was necessary to defend himself against Birdwell. Even if the jury had been explicitly instructed on the State's burden to disprove Flesher's self-defense theory beyond a reasonable doubt and that the burden never shifted to Flesher, we are not persuaded the jury would have reached a different verdict. See *McLinn*, 307 Kan. at 318.

II. WE OBSERVE NO CLEAR ERROR IN FLESHER'S CLAIM A SEPARATE SELF-DEFENSE INSTRUCTION SHOULD HAVE BEEN GIVEN IN RELATION TO THE AGGRAVATED BURGLARY CHARGE

Flesher argues the district court erred by limiting the jury's ability to consider his self-defense claim to the aggravated battery charge. Flesher claims the self-defense instruction should have applied to the aggravated burglary charge as well as the aggravated battery charge because one of the elements of aggravated burglary included the intent to commit aggravated battery.

As noted above, Flesher did not object to the language of the self-defense instruction before the district court. We, therefore, must determine whether the jury instruction was clearly erroneous. K.S.A. 22-3414(3); *McLinn*, 307 Kan. at 318.

To determine whether an instruction is erroneous, we must consider "'whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record.'" *State v. Walker*, 308 Kan. 409, 424, 421 P.3d 700 (2018). "A defendant is entitled to an instruction on every affirmative defense that is supported by competent evidence. Competent evidence is that which could allow a rational fact finder to reasonably conclude that the defense applies." K.S.A. 21-5108(c).

Flesher argues the self-defense instruction should have applied to the aggravated burglary charge. Flesher does not suggest self-defense is always legally appropriate for a burglary charge but, because the State made Flesher's intent to use force relevant in its charging decision, it is an appropriate defense here. In other words, Flesher suggests that if self-defense justified his use of force, then it justified his intent to use that force as it related to the aggravated battery charge. And because intent to commit aggravated battery was an element of aggravated burglary, Flesher asserts self-defense was a valid defense to aggravated burglary.

9

In support of his claim, Flesher relies on *State v. Milo*, 315 Kan. 434, 510 P.3d 1 (2022). In *Milo*, our Supreme Court explained:  "[W]hile a self-defense instruction is never legally appropriate with respect to a charge of felony murder, such an instruction may be given in felony-murder cases if self-defense is appropriately used to negate criminal liability for the underlying inherently dangerous felony." 315 Kan. at 442-43. The *Milo* court clarified self-defense cannot legally justify the killing itself, but it can "negate criminal liability for the underlying inherently dangerous felony as an *element* of felony murder." 315 Kan. at 443.

On the other hand, the State relies on *State v. Holley*, 315 Kan. 512, 518, 509 P.3d 542 (2022), decided the same day as *Milo*, explaining self-defense "is legally unavailable to a person who '[i]s attempting to commit, committing or escaping from the commission of a forcible felony.'" Burglary is specifically listed as a forcible felony under K.S.A. 21-5111(n).

Under *Milo* and *Holley*, self-defense would generally be a legally unavailable defense to Flesher as he was committing an aggravated burglary by remaining in Birdwell's residence, without authority, with the intent to commit a felony—aggravated battery. But so long as it is legally and factually appropriate, Flesher could claim self-defense as a legal justification absolving him of criminal liability for the underlying forcible felony—aggravated battery.

Even if the instruction was legally and factually appropriate for the aggravated burglary charge, the district court allowed the self-defense instruction for the underlying criminal act of aggravated battery. Given the verdict form, it would appear the jury addressed it first and rejected such defense. That is, the jury found Flesher was not justified in using force in the aggravated battery conviction and Flesher, therefore, by logical extension, could not be justified in using force in the aggravated burglary on the premise intent to commit aggravated battery was an element of aggravated burglary.

10

Next, Flesher asserts the district court also failed by not giving a jury instruction reflecting the burden of proof for an affirmative defense must be disproved by the State beyond a reasonable doubt and never shifts to the defendant. He now claims such an instruction should have been given with the aggravated burglary instruction. As previously mentioned, this jury instruction was not requested below, so we must look for clear error.

We are persuaded the instructions when viewed together were sufficient. We observe no clear error in failing to provide the jury with a self-defense instruction on Flesher's aggravated burglary charge or one on the State's burden of proof to disprove self-defense beyond a reasonable doubt. Flesher has failed to show us the jury would have reached a different verdict had both instructions on self-defense tied to the aggravated burglary instructions been given.

III.     NO UNANIMITY JURY INSTRUCTION FOR THE AGGRAVATED BURGLARY CHARGE WAS REQUIRED

No unanimity jury instruction for the aggravated burglary charge was given by the district court. Flesher now contends the instructional error supports a clear error finding. Specifically, Flesher argues the State failed to specify when he committed the offense of aggravated burglary as evidence suggests it could have been at various points throughout the early morning hours of July 21, 2021. Flesher again seeks reversal of his aggravated burglary conviction for lack of a unanimity jury instruction.

Flesher admits he failed to ask for a unanimity jury instruction at trial. As previously noted, unpreserved instructional errors are reviewed for clear error. K.S.A. 22-3414(3). Jury instructions are clearly erroneous if an error occurred, and we are ""firmly convinced that the jury would have reached a different verdict had the instruction error

not occurred."'" *McLinn*, 307 Kan. at 318. Flesher bears the burden to establish prejudice. See 307 Kan. at 318.

"When a case involves multiple acts, the jury must unanimously agree on which specific act constitutes the crime." *State v. Garcia-Martinez*, 318 Kan. 681, 693, 546 P.3d 750 (2024).

> "[There is] a more particularized test when . . . a defendant challenges a district court's failure to give a unanimity instruction in a case potentially involving multiple acts. First, we determine whether the case involves multiple acts. Second, if the case does involve multiple acts, we consider whether an error occurred because the district court failed to give a unanimity instruction and the State failed to elect which act it was relying on. Third, if there was an error, we decide whether it requires reversal.
>
> > "Under the first step, we decide, '"whether the defendant's actions could have given rise to multiple counts of the charged crime or whether the alleged conduct was unitary."' In Kansas, '"acts are multiple acts if they are factually separate and distinct."' Incidents are factually separate when either independent criminal acts have occurred at different times or when a fresh impulse motivated a later criminal act. Four factors guide our inquiry to determine whether conduct was unitary: (1) whether the acts occurred at or near the same time; (2) whether they occurred at the same location; (3) whether an intervening event occurred between the acts; and (4) whether a fresh impulse motivated any portion of the acts. When the conduct is unitary, no unanimity instruction is necessary and the analysis ends. [Citations omitted.]" 318 Kan. at 694.

Here, Flesher contends the jury heard evidence of multiple acts supporting his aggravated burglary charge and the State failed to precisely specify when the offense was committed. Flesher also argues the jury was unaware it had to unanimously determine which act supported the aggravated burglary charge.

The State responds this was not a multiple acts case. The State focuses on the fact Flesher remained in Birdwell's residence after he was locked out and reentered only to

get his keys. The State suggests, even if there were multiple acts, Flesher's argument still fails as the prosecutor elected a certain act during closing arguments.

The first step is to determine whether there were multiple acts; that is, whether Flesher's actions gave rise to multiple counts of the charged crime—aggravated burglary—or his actions were unitary. See *Garcia-Martinez*, 318 Kan. at 694. Here, Flesher was asked to leave Birdwell's residence multiple times—maybe as many as 50—throughout the night. But there seems to be only one instance in which Flesher formed the intent to commit a felony therein. As Flesher admits, the crime of aggravated burglary requires the coexistence of an unlawful remaining within *and* the intent to commit a felony. *State v. Gutierrez*, 285 Kan. 332, 338-39, 172 P.3d 18 (2007).

There was some confusion surrounding intent as the jury asked during deliberations when the intent must occur. The district court responded, in part, "Intent may be formed at the time of the lawful entry or after consent to an otherwise lawful entry has been withdrawn." The district court presumably meant to say "at the time of the *unlawful* entry or after consent to an otherwise lawful entry has been withdrawn." Regardless, we must focus on Flesher's unlawful remaining within the residence and what happened then. The jury instructions, along with the district court's response to the jury's question and the parties' arguments, clarified the intent had to coexist with the unauthorized remaining within.

Here, the underlying felony was aggravated battery. Thus, while Birdwell did, in fact, ask Flesher to leave her residence many times over the span of a few hours, the aggravated burglary could only have happened when Flesher remained within the residence *and* formed the intent to commit the aggravated battery. The aggravated battery—consisting of Flesher striking Birdwell in the head, Birdwell's attempt to trip Flesher so she could escape, and Flesher's additional strikes to Birdwell's head or face—

13

occurred at or near the same time. The record does not suggest another point in time in which Flesher formed the intent to strike Birdwell causing disfigurement to her ear.

Flesher hit Birdwell in her residence at or near Birdwell's kitchen area, and no intervening event occurred between the acts. It would be farfetched to find Birdwell's attempt to escape and trip Flesher resulted in a fresh impulse for Flesher to continue striking Birdwell in the head or face. The incident was one continuous unitary act. This was the only instance in which the State alleged aggravated battery. Because the conduct was unitary, no unanimity jury instruction was necessary, and our analysis could end here. See *Garcia-Martinez*, 318 Kan. at 694.

In further support of our analysis, we note, during closing argument, the prosecutor explained to the jury the aggravated burglary occurred when Flesher reentered the residence after Birdwell locked him out:

> "And finally, ladies and gentlemen, a couple of other things. The defendant remained in a dwelling. You know that's true. He even admitted it's true. The defendant did so without authority. You know that's true. He admitted he didn't have authority, that she wanted him to leave and he wouldn't leave.
> "That the defendant did so with the intent to commit aggravated battery therein. I don't even really have to prove that he committed the aggravated battery, I just have to prove that he had the intent to do it. And we know he had the intent to do it, ladies and gentlemen, because he had the keys in his hand and he's coming down on her. And did he knowingly do that? You bet he did, because he told you, if you believe his testimony, that 'Oh, well, I didn't hit her in the face. I was going directly for her head and these areas'. And that there was a human being in that residence. We know that Vera Birdwell was in that residence."

The prosecutor specifically noted the intent to commit aggravated battery occurred within the residence when Flesher hit Birdwell on her head and face while his keys were in his hand. This could only have happened after Birdwell locked Flesher out of her

14

residence, opened the door to give him back his keys, and Flesher reentered the residence over Birdwell's objection.

Flesher's attorney emphasized this point in his own closing argument:

"Ladies and gentlemen, the aggravated burglary, the State has to prove that Mr. Flesher remained in the dwelling with the intent to commit aggravated battery therein. But why did he remain in the dwelling after she allowed him in? He remained there to try to talk to her about things. He didn't want to leave until he knew where that relationship stood.

"When you look at this evidence you're gonna see, and you've already heard the testimony that Mr. Flesher didn't do anything to her until after she shot the gun at him, and at that point he knew he had a limited amount of time to get out of the house before things got worse, so he did punch her to stun her, to grab that gun, and then she grabbed his legs and so he kicked at her. He realized she's not stunned so he punched her two to three more times and then grabbed the gun and left. He had no intention of staying there to do any of this. He wanted to talk to her."

Flesher's attorney focused on the same narrow portion of the evening after Flesher reentered the residence to get his keys. Flesher's attorney specifically pointed out, "Flesher didn't do anything to her until *after* she shot the gun at him." (Emphasis added.) Shortly after Flesher reentered the residence to get his keys, Birdwell hit him with the gun, causing it to discharge. Flesher even admits in his brief on appeal: "[T]he more important dispute at [Flesher's] trial was whether [Flesher] acted in self-defense several minutes [after the gun was discharged] when he struck [Birdwell] several times." Under the facts presented, we observe the district court did not err in failing to provide a unanimity jury instruction for the aggravated burglary charge as Flesher's conduct was one continuous act; therefore, no unanimity instruction was required.

IV.     THE DISTRICT COURT'S ANSWER TO THE JURY COULD HAVE BEEN MORE PRECISE

Flesher alleges the district court erred when it responded to a mid-deliberation jury question with a legally incorrect answer about the timeline of the aggravated burglary charge. The State argues Flesher unequivocally approved the part of the district court's response to the jury question at issue and should be barred from raising the claim on appeal under the invited error doctrine. The State claims that even if the error was not invited, there was no room for the jury to conclude the intent to commit aggravated battery could exist separately from when he unlawfully remained in Birdwell's residence. Flesher responds the jury's question inherently suggested its confusion as it asked when intent had to be proved.

We review the district court's response to a mid-deliberation jury question for an abuse of discretion. To the extent we must determine whether the district court's response was legally correct, our review is unlimited. *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014). When a jury expresses confusion about a point of law, "the court has an obligation to provide further instruction, even if the original jury instruction would normally have been sufficient." *State v. Stieben*, 292 Kan. 533, 536, 256 P.3d 796 (2011).

Here, regarding Instruction No. 10—"The defendant did so with the intent to commit aggravated battery therein."—the jury asked mid-deliberation: "When does intent have to be proved to have [occurred]? Timeline of intent—premeditated vs. in the moment." After receiving the jury's question, the district court apparently discussed with the parties off the record the appropriate response. The district court initially stated on the record it would respond, "'Intent may be formed at the time of the lawful entry or after consent to an otherwise lawful entry has been withdrawn.'" At the time, the State's only response was, "Judge, I don't have an objection . . . . We should have talked about this informally, but I would start off by saying this offense is not an offense that premeditation is an element, and then go forward with what you said." Flesher admits he

16

did not object to the response on the basis he now raises on appeal. Defense counsel noted, in response to the State's requested change to the district court's answer, "Your Honor, we feel the comment that the Court is prepared to submit to the jury provides enough clarity for them, and we don't think the additional clarity about premeditation is needed."

The district court then instructed the jury: "Premeditation is not applicable to this instruction. Intent may be formed at the time of the lawful entry or after consent to an otherwise lawful entry has been withdrawn." It appears to us the district court intended to explain intent may be formed at the time of the *unlawful* entry or after consent to an otherwise lawful entry has been withdrawn. Here, however, Birdwell opened the door for Flesher to retrieve his keys and then demanded he leave. The focus was on the latter half of the response to the jury question to determine whether Flesher formed his intent after consent to an otherwise lawful entry had been withdrawn.

Flesher again argues this was not invited error as there was not unequivocal approval from the defense. See *Lewis*, 299 Kan. at 854-55. The record reflects Flesher agreed to the language of the instruction now at issue as he felt it provided enough clarity for the jury. Even if the issue is not precluded under the doctrine of invited error, Flesher's claim still fails.

Now, Flesher alleges the district court's response to the jury question was legally inadequate and misleading and the instruction "should have instructed the jury that 'the formation of intent to commit a felony in a building must, at some point, coexist with . . . an authorized remaining within it'" under *Gutierrez*. There, our Supreme Court explained:

> "To support a conviction for aggravated burglary, the intent to commit a felony and the unauthorized entering into or remaining within must at some point in time coexist. It is not necessary, however, to prove 'remaining within' burglary or aggravated burglary to

17

show that the intent to commit a felony was precisely contemporaneous with any withdrawal of a defendant's authority to be inside the building. [Citation omitted.]" 285 Kan. at 338-39.

In fact, in *Gutierrez*, our Supreme Court noted a rational fact-finder "may not have been able to conclude [Gutierrez] was guilty beyond a reasonable doubt of aggravated burglary based on evidence of unauthorized entry contemporaneous with [the underlying felony]." 285 Kan. at 339. But our Supreme Court affirmed Gutierrez' aggravated burglary conviction, reasoning: "Evidence of development of [Gutierrez'] intent to commit a felony at any point between [the victim's] expression that [Gutierrez] was unwelcome and his departure from the apartment was legally sufficient to support the aggravated burglary conviction." 285 Kan. at 339.

The district court's response did not have to tell the jury Flesher's intent to commit a felony must be "precisely contemporaneous" with the moment Birdwell withdrew consent to Flesher's otherwise lawful entry into her residence. See 285 Kan. at 339. Flesher's intent to commit aggravated battery in Birdwell's residence merely had to coexist with an unauthorized remaining within the residence. Under *Gutierrez*, the district court's response to the jury question was legally appropriate as it explained: "Intent may be formed . . . *after consent to an otherwise lawful entry has been withdrawn*." (Emphasis added.) That is, Flesher could form the intent any time after consent was withdrawn and he unlawfully remained in the residence. The State focused its argument on Flesher's re-entry into the residence after he was locked out and his intent to commit battery after that point, while he was still inside the residence after Birdwell had repeatedly demanded he leave. The district court's response to the jury's mid-deliberation question could have been more precise, but it was adequate and did not mislead the jury.

18

V.    THERE WAS NO PROSECUTORIAL ERROR IN THE CLOSING ARGUMENT

Flesher contends the State failed to accurately explain the law during closing argument related to aggravated battery and aggravated burglary. Flesher asks us to reverse his aggravated battery and aggravated burglary convictions because the alleged prosecutorial error deprived him of a fair trial. The State responds the prosecutor accurately explained the law as to aggravated battery and aggravated burglary.

A prosecutor's comments made during voir dire, opening statement, or closing argument are reviewed by us even if the defendant failed to contemporaneously object. *State v. Sean*, 306 Kan. 963, 974, 399 P.3d 168 (2017). We use a two-step process—looking at error and prejudice—to evaluate claims of prosecutorial error:

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial." *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

We recognize prosecutors are afforded a wide latitude to conduct the State's case, but a prosecutor cannot misstate the law in furtherance of the prosecution or argue factual inferences without evidentiary foundation. *State v. Patterson*, 311 Kan. 59, 70, 455 P.3d 792 (2020).

*Aggravated battery*

As to aggravated battery, Flesher alleges the State minimized the meaning of disfigurement. Both parties provided multiple dictionary definitions of the term disfigurement. Flesher argues the definitions all require "a lasting injury which affects an

19

individual's appearance—not an injury that is temporary, or which has no significant effect on somebody's appearance."

During closing argument, the State argued:

"[Birdwell] found her right ear ripped open. You saw that it's scarred. It's never gonna be the same. And you may be sitting there thinking to yourself 'Well, it's not the most egregious injury I've ever seen in my life' but we don't have to prove that. We just have to prove that it's disfigured, that it's different than when she first started that evening, and it's different at the hands of this man right here.

. . . .

"Ladies and gentlemen, you will see this closer up and you can see this missing chunk out of her ear, right there. You can see that it's gone. You can know that that's not how she was born or that's not how her ear has been for her entire life, and it's different since then. She doesn't have the money for reconstructive surgery and it was fused back together. It's not the same as it was. That's disfigurement, ladies and gentlemen."

Flesher fails to recognize the evidence showed Birdwell suffered a lasting injury that affected her appearance, not a temporary injury that had no significance on the effect of Birdwell's appearance. While the injury complained of was limited to Birdwell's ear and may not be obviously apparent at first sight, the ear itself was torn to the point it was scarred and required reconstructive surgery. The jury was provided photographs of the ear to show the extent of the injury and its appearance. We observe no error in the prosecutor's statement describing Birdwell's disfigurement.

*Aggravated burglary*

In support of this argument, Flesher contends the State failed to adequately explain to the jury the elements of aggravated burglary must coexist under *Gutierrez*, 285 Kan. at

20

338-39. Flesher acknowledges the State addressed each element of the crime but alleges the State failed to note the importance of the elements coexisting.

Again, in *Gutierrez*, our Supreme Court noted the elements must "coexist" but need not be "precisely contemporaneous." 285 Kan. at 338-39. Here, the prosecutor stated during closing argument: "I don't have to prove that [Flesher] went to [Birdwell's] house to punch her. I have to prove that he remained within that residence and I have to prove that when he's inside that residence he designed or formed the intent, and he did, ladies and gentlemen." Again, the State specifically focused its argument on events after Birdwell had locked Flesher out of the residence and he reentered to get his keys. The prosecutor's statement aligns with the reasoning in *Gutierrez*. The State had to establish Flesher developed the intent to commit a felony at some point between Birdwell's repeated demands for Flesher to leave her residence and his final departure.

In closing argument, the State specifically argued it had to prove "that *when he's inside that residence* he designed or formed the intent." (Emphasis added.) Notably, the State could have more clearly stated, "When Flesher was unlawfully inside the residence, he designed or formed the intent." Still, the evidence established Birdwell opened the door for Flesher to get his keys—an otherwise lawful entry—but told him to leave multiple times, hit him in the head with the pistol, and threw shoes at him as he would not listen to her, indicating her consent to his otherwise lawful entry was withdrawn. While Flesher remained in the residence without permission, he formed the intent and committed aggravated battery on Birdwell by striking her in the head and face multiple times.

Even if the statements Flesher complains about were erroneous, his claim would also fail under the prejudice prong of the analysis as both of the prosecutor's statements were harmless and did not affect the outcome of the trial. In addressing prejudice, we

21

"apply the constitutional harmlessness standard laid out in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), which demands the State show beyond a reasonable doubt that the prosecutorial error did not affect the trial's outcome in light of the entire record. In other words, the question is whether there is no reasonable possibility that the error contributed to the [decision]." *State v. Flack*, 318 Kan. 79, 111, 541 P.3d 717 (2024).

The prosecutor conveyed to the jury Flesher "remained within that residence" and "when he's inside that residence he designed or formed the intent." Although the prosecutor did not specifically say the elements must coexist, it is clear the intent must be formed while inside the residence. The evidence also showed Flesher remained in the residence after Birdwell asked him to leave—unlawfully remaining. The comments during closing argument did not misstate the law and did not fall outside the wide latitude afforded prosecutors to conduct the State's case. Flesher's right to a fair trial was not violated by the prosecutor's comment in closing argument. Even assuming there was error, it was harmless.

VI.     THERE WAS NO CUMULATIVE ERROR

Finally, Flesher argues the cumulative effect of the errors denied him a fair trial. We have unlimited review over claims of cumulative error. *State v. Taylor*, 314 Kan. 166, 168, 496 P.3d 526 (2021).

"The cumulative effect of trial errors may require reversal of a defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. If any of the errors being aggregated are constitutional, their cumulative

22

effect must be harmless beyond a reasonable doubt. [Citations omitted.]" *State v. Guebara*, 318 Kan. 458, 483, 544 P.3d 794 (2024).

Our Supreme Court recently determined "unpreserved instructional issues that are not clearly erroneous may not be aggregated in a cumulative error analysis because K.S.A. 2022 Supp. 22-3414(3) limits a party's ability to claim them as error." *State v. Waldschmidt*, 318 Kan. 633, 634-35, 546 P.3d 716 (2024). Flesher admits *Waldschmidt* controls his cumulative error arguments. At most, Flesher identified unpreserved instructional errors that are not clearly erroneous and may not be aggregated in a cumulative error analysis. Flesher's claim of cumulative error fails.

Affirmed.